UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARLOS LAMPLEY — CIVIL ACTION

VERSUS

E. DUSTIN BICKHAM, ET AL. — NO. 23-00328-BAJ-RLB

RULING AND ORDER

Before the Court is Petitioner's **Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. 1)**. The Petition is opposed. (Doc. 13). In the Petition, Petitioner asserts the following four claims:

(1) Petitioner received ineffective assistance of counsel ("Claim 1");

(2) Petitioner's Fourth Amendment rights were violated when he was illegally stopped and detained ("Claim 2");

(3) Petitioner's Fourteenth Amendment rights were violated due to an improperly constituted jury venire ("Claim 3"); and

(4) the state trial court violated Petitioner's Sixth Amendment right to counsel by resentencing him in the absence of counsel ("Claim 4").

(Doc. 1).

On August 26, 2026, the Magistrate Judge issued a **Report and Recommendation (Doc. 15, the "Report")**, recommending that the Court:

(1) Deny Petitioner's application for habeas corpus relief as to Claims 1, 2, and 3; and

(2) Grant Petitioner's application for habeas corpus relief as to Claim 4.

(Doc. 15 at 20). The Report further recommends that the Court direct the state court to:

(1) Vacate Petitioner's sentence; and

(2) Resentence Petitioner with counsel present or without counsel only after Petitioner has knowingly and intelligently waived representation.

(*Id.*).

The State filed a partial Objection, arguing that the Court should dismiss Petitioner's habeas petition in its entirety. (Doc. 16). The State contends that when Petitioner's application for postconviction relief came to the state court for a hearing, Petitioner expressed his desire to represent himself. (*Id.* at 4). The State urges: "As to the resentencing in the absence of counsel claim, Judge Foxworth-Roberts stated it was denied pursuant to petitioner's oral waiver of right to counsel on February 18, 2020 and November 5, 2021 and petitioner's desire to represent himself." (*Id.* at 4).

Petitioner filed an Objection that appears to be untimely, arguing that the Court should reject the Report's recommendation as to Claims 1 and 2 and adopt the Report's recommendation as to Claims 3 and 4. (Doc. 17 at 10). Petitioner asserts delays in the prison mailing system, such that, out of an abundance of caution, the Court will consider Petitioner's Objection as if timely filed.[1] (*Id.* at 2). Petitioner also requests an evidentiary hearing. (*Id.*).

---

[1] Petitioner alleges that Dixon Correctional Institute officials provided him the Report on September 2, 2026, and Petitioner dated his Objection September 14, 2026, although it was filed into the record several days later. (Doc. 17 at 2, 13).

For the following reasons, the Court will **APPROVE** the Magistrate Judge's Report and Recommendation and **ADOPT** it as the Court's opinion in this matter.

## I. FACTUAL BACKGROUND

The Report describes the factual background of this case as follows, as provided by the Louisiana First Circuit Court of Appeal:

> On June 21, 2012, the FBI, the Louisiana State Police, the East Baton Rouge Sheriff's Office, and the Baton Rouge Police Department conducted a multi-agency operation targeting prostitution and human trafficking in Baton Rouge, organized by FBI Special Agent Taneka Blacknell. Prior to this date, the FBI had information indicating that the defendant was involved in human trafficking.
>
> Specifically, the Shreveport Resident Agency of the New Orleans Division came into contact with the defendant during an operation. At that time, the defendant and other females were arrested, and DVDs containing footage of what was purported to be a reality television show on "pimping" and prostitution were collected.
>
> As a result of the June 21, 2012 operation, the defendant was arrested on that date. The operation took place at the Crestwood Suites Hotels in Baton Rouge, and targets were developed from the website Backpage as well as other websites. Further, under their procedure, an undercover agent was used to contact suspected prostitutes to arrange a date and, after an agreement for sex was negotiated, the police would enter the hotel room and make an arrest.
>
> On the date noted above, June 21, 2012, an undercover agent negotiated a sex act with a sixteen-year-old high school student, then the agent gave an audible signal for the officers to enter the room. While at the hotel, the officers made contact with the defendant who was at the hotel with another female. The officers detained, separated, and questioned the defendant and the female. The officer conducted a search of the defendant and discovered he had a hotel key for Room 326. The defendant gave the officers consent to search the hotel room, and in doing so, they discovered a bag of alprazolam pills. Once the defendant was confronted regarding the pills, he denied that Room 326 was his room, indicating that Room 240 was his room. The officers then went to Room 240, where they located two other females, a substantial amount of paperwork bearing the defendant's name, and a DVD. The room was

not registered in the defendant's name, and he did not have a key to the room on his person. The defendant was placed under arrest for possession of drugs, solicitation for prostitution, and human trafficking.

M.P., the victim on count one (trafficking of children for sexual purposes), testified that her date of birth is January 14, 1994. According to the indictment, the offense was committed "[o]n or about July 2011 to October 19, 2011[.]" M.P. first met the defendant at a studio in Baton Rouge.

Although she was seventeen years old at the time, she told the defendant she was eighteen years old. After the initial meeting with the defendant, she became interested in the life that he described to her, and began participating in "dates." Her first date was obtained as a result of a "backpage" ad that one of the girls posted on her behalf. M.P. specifically described the date as her going to a room with the "trick" and having sex with him. She received payment in exchange for the sex and was told to go pay her "Daddy," the defendant. She went on more dates and eventually began working the "track," which consisted of her riding around to pick someone, preferably a New Orleans tourist, and attempting to obtain their personal information, including pin numbers. In addition to stealing pin numbers, on some occasions she performed sexual acts while working the track. Whenever she would obtain money, she would give it to the defendant. When she obtained credit cards and pin numbers, she would go to an ATM to check the balance on the card, retrieve funds, and then go to Walmart to purchase money orders to give to the defendant.

M.J., the victim on count two (human trafficking when the services include commercial sexual activity), confirmed that her date of birth is August 26, 1987. She further testified that she was a prostitute for the defendant. According to the indictment, the offense was committed "[o]n or about January 2008 [.]" M.J. first met the defendant in 2007, through a female who indicated that she needed help getting away from a male who she was staying with at the time. After prostituting for another pimp who would beat her, M.J. began working for the defendant instead. All of the money that she obtained from "tricks" was given to the defendant. M.J. considered herself as one of the defendant's higher earners. She testified that $90,000 was the most amount of money she ever made for the defendant in one night. She confirmed that if she ever failed to do something that she was supposed to do, the defendant would punish her by hitting her, withholding food, or raping her.

> K.W., the victim on count three (attempted human trafficking when the services include commercial sexual activity), testified that her date of birth is July 30, 1996. According to the indictment, the offense was committed "[o]n or about June 21, 2012[.]" At trial, K.W. denied that she was ever solicited by the defendant to work as a prostitute, but stated that she and D.J., her close childhood friend that she referred to as "her sister," met the defendant at a hotel. K.W. recalled giving a pretrial interview to FBI Agent Blacknell, but did not recall the content of the interview. According to Agent Blacknell, during her pretrial interview of K.W. on August 2, 2012, K.W. confirmed that she and D.J. met the defendant at a hotel, and he described the concepts of pimping and prostitution and proposed that she participate in such acts, but she refused. *See State v. Lampley,* 18-0402 (La. App. 1 Cir. 11/2/18), 265 So.3d 799.

(Doc. 15 at 2–5).

## II. PROCEDURAL HISTORY

The Report describes the procedural history of this case as follows:

> Petitioner was charged by an amended grand jury indictment on count one with trafficking of children for sexual purposes, a violation of La. R.S. 14:46.3, and on counts two, three, and four with human trafficking, violations of La. R.S. 14:46.2. The defendant pled not guilty on all counts, and proceeded to trial by jury. Prior to the verdict, the trial court granted the defendant's motion to quash as to count four. The jury found the defendant guilty as charged on counts one and two, and guilty of the responsive offense of attempted human trafficking on count three, in violation of La. R.S. 14:27 and La. R.S. 14:46.2.
>
> Petitioner was sentenced on count one to fifteen years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence; on count two to twenty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence; and on count three to five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The trial court ordered that all three sentences be served consecutively. Petitioner's motion to reconsider sentence was denied.
>
> Petitioner appealed and his convictions were affirmed by the First Circuit Court of Appeal on November 2, 2018. However, the case was remanded for resentencing. The petitioner sought writs which were denied by the Louisiana Supreme Court on April 8, 2019. The petitioner

> was resentenced on May 14, 2019, and his sentence on count one was increased by five years.
>
> On or about October 29, 2019, the petitioner filed an Application for Post-Conviction Relief. The trial court denied the application on November 5, 2021. The petitioner then sought writs in the First Circuit Court of Appeal and the Louisiana Supreme Court which were denied on March 28, 2022, and October 12, 2022, respectively. The instant Petition for Writ of Habeas Corpus was filed by the petitioner on April 12, 2023.

(Doc. 15 at 5–6).

## III. DISCUSSION

The Report recommends that the Court deny Petitioner's requests for relief as to Claims 1, 2, and 3. The Report further recommends that the Court grant Petitioner's request for relief as to Claim 4—Petitioner's claim that his Sixth Amendment right to counsel was violated when he was resentenced in the absence of counsel. The Court will address each claim in turn.

### A. Claim 1—Ineffective Assistance of Counsel.

Petitioner urges that his Counsel was ineffective for failure to call certain witnesses and for failure to move to suppress certain evidence. The Report concluded that Petitioner failed to make the requisite showing that his Counsel "was ineffective for failing to investigate or for his decision to not call Jones and Gaines as witnesses." (Doc. 15 at 17). Similarly, the Report concluded that Petitioner failed to show that "absent the excludable evidence, there is a reasonable probability that the verdict would have been different." (*Id.* at 18). Petitioner objects to the Report and requests

an evidentiary hearing.[2]

For the following reasons, the Court agrees with the Report's conclusion that Petitioner fails to satisfy the prejudice showing required for ineffective assistance claims. The Court reviews claims of ineffective assistance of counsel under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Petitioner must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it

---

[2] Petitioner's request for an evidentiary hearing must be denied. As the Fifth Circuit explained in *Day v. Quarterman*:

> Requests for an evidentiary hearing are evaluated under 28 U.S.C § 2254(e)(2). *Murphy v. Johnson,* 205 F.3d 809, 815 (5th Cir.2000). Section 2254(e)(2) provides:
>
> If the applicant has failed to develop the factual bases of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-(A) the claim relies on-(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Day v. Quarterman*, 566 F.3d 527, 537 (5th Cir. 2009). The Court finds an evidentiary hearing unnecessary here.

unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must ***be highly deferential.*** When evaluating the first *Strickland* criterion, [the Court] must indulge a ***strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance***. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (emphasis added) (quotation marks and citations omitted). Moreover, in a habeas proceeding alleging ineffective assistance of counsel, the petitioner bears the burden of proof. *See Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994). Here, Petitioner cannot satisfy his burden of proof.

The United States Court of Appeals for the Fifth Circuit has repeatedly held that "[c]omplaints of uncalled witnesses are not favored in habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986) (citations omitted). "Absent some showing that a counsel's subjective decision-making was *objectively* unreasonable in view of the information and evidence available to said counsel, it is virtually impossible for a habeas corpus petitioner to overcome the presumption of reasonableness afforded his counsel's strategic and tactical decisions under *Strickland.*" *Moore v. Quarterman*, 526 F. Supp. 2d 654, 694 (W.D. Tex. 2007) (citing *Gutierrez v. Dretke,* 392 F. Supp. 2d 802, 875–76). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name

the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).

Although Petitioner has presented two Affidavits of purported uncalled witnesses, both Affidavits contend that Petitioner's Counsel was aware of the information within the witnesses' knowledge and their contact information. To the extent Counsel investigated the witnesses and made a strategic or tactical decision not to call them, this "does not constitute ineffective assistance." *Green v. Cockrell,* 67 Fed. App'x. 248, 250 (5th Cir. 2003).

Here, the Court agrees with the Report's conclusion that:

> [T]he testimony of these affiants on cross-examination could have been harmful to the petitioner, and there is no reasonable probability that the testimony of these affiants would have altered the outcome of the trial. Neither affiant states that she was around the petitioner and the victims at all times; therefore, neither affiant can say with certainty that the petitioner never engaged in certain behaviors with the victims (took their ID cards, physically abused them, etc...), as evidenced by the "to the best of my knowledge" statements in their affidavits. In fact, in an interview with the FBI, Jones had no idea why petitioner was in possession of ID cards and credit cards belonging to different women. *See* R. Doc. 5-1, p. 64. Also, neither affiant explained why they were present at a hotel where a multi-agency operation targeting prostitution and human trafficking was taking place, along with the father of their children, who had been previously associated with human trafficking. The presence of the affiants at the hotel only bolsters the credibility of the victims and other witnesses who testified that affiants Jones and Gaines were involved in the petitioner's operation.

(Doc. 15 at 16). Providing a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" as the Court must, the Court

finds that Petitioner has failed to show prejudice. *Fields*, 565 F.3d at 290.

With respect to Petitioner's argument that his Counsel failed to move to suppress certain evidence, the Court agrees with the Report's conclusion that Petitioner fails to overcome the presumption that his Counsel's decision not to file a motion to suppress was sound trial strategy. (Doc. 15 at 17). In his Objection, Petitioner argues that "the State introduced the DVDs and personal papers as a showing that Petitioner not only knew about prostitution but would also use the lifestyle captured on those DVDs to entice young women to enter the world of prostitution." (Doc. 17 at 6). Petitioner urges that had this evidence been excluded, the result would have been different. (*Id.*). But Petitioner also argues in his Objection that "MP testified that she met Petitioner at a studio and they watch[ed] a DVD that looked like MTV Cribs." (*Id.* at 6–7). Accordingly, it appears that the "DVDs and personal papers" were not the only manner in which the state would have sought to introduce the evidence that Petitioner takes issue with.

Accordingly, Petitioner has not shown a reasonable probability that but for Counsel's alleged poor performance, the result of the proceeding would have been different. *See Rivas-Lopez*, 678 F.3d at 357. Accordingly, the Court will **ADOPT** the Report with respect to Claim 1 and **DENY** Petitioner's application for habeas corpus relief as to Claim 1.

**B. Claim 2—Violation of Fourth Amendment Rights.**

In Claim 2, Petitioner alleges that his Fourth Amendment rights were violated when he was illegally stopped and detained. The Report rejected this argument,

emphasizing the following:

> [W]ith regards to the alleged Fourth Amendment violation concerning his detention and/or arrest, and illegally seized evidence, Petitioner is clearly precluded from litigating his underlying Fourth Amendment claims in this federal court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnote omitted)); *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."); *Bailey v. Cain*, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ("It is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."). However, it is equally clear that "*Stone v. Powell* does not bar an ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate a Fourth Amendment claim." *Moreno v. Dretke,* 450 F.3d 158, 168 n.6 (5th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)). Because review of the Fourth Amendment claim is barred by the *Stone* doctrine, this aspect of Petitioner's claim must be dismissed.

(Doc. 15 at 13). The State agrees with the Report's conclusion, but Petitioner objects.

Petitioner argues that he attempted to file motions to suppress with the state court, but that the state court informed him that any motion needed to come through counsel, and his Counsel failed to file a motion to suppress as requested. (Doc. 17 at 10). Petitioner also argues that he was precluded from raising this issue for the first time on appeal. (*Id.* at 9–10). Petitioner contends that an evidentiary hearing should have occurred in the state court, and because no hearing was held, the material facts were not adequately developed. (*Id.* at 10).

The Court agrees with the Report's conclusion as to Claim 2. As described by

the Report, the appropriate vehicle for Petitioner to challenge his Counsel's alleged failure to file motions to suppress is in an ineffective assistance of counsel claim, which the Court has previously considered and rejected. Accordingly, the Court will **ADOPT** the Report with respect to Claim 2 and **DENY** Petitioner's application for habeas corpus relief as to Claim 2.

**C. Claim 3—Violation of Fourteenth Amendment Rights.**

Both Petitioner and the State agree with the Report with respect to Claim 3. Accordingly, the Court will **ADOPT** the Report with respect to Claim 3 and **DENY** Petitioner's application for habeas corpus relief as to Claim 3.

**D. Claim 4—Violation of Sixth Amendment Right to Counsel at Resentencing.**

The State argues that the Court should decline to adopt the Report on Petitioner's Claim 4, that he was resentenced without counsel, based on "[P]etitioner's oral waiver of right to counsel on February 18, 2020 and November 5, 2021 and petitioner's desire to represent himself." (Doc. 16 at 4). Accordingly, the Court will review the state court record to determine whether Petitioner knowingly and voluntarily waived his right to counsel at his resentencing based on the following legal standards.

Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade,* 388 U.S. 218, 227–228 (1967); *Powell v. Alabama,* 287 U.S. 45, 53, 57 (1932)). The Sixth Amendment right to counsel may be waived by

a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. *Montejo*, 556 U.S. at 786 (citing *Patterson v. Illinois,* 487 U.S. 285, 292, n.4 (1988); *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

Before granting a defendant's clear and unequivocal request to proceed *pro se*, the trial judge "must caution the defendant about the dangers of such a course of action so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Austin v. Davis*, 876 F.3d 757, 782–83 (5th Cir. 2017) (citing *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008) (quoting *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986)); *see also Faretta v. California,* 422 U.S. 806 (1975)). A review of the state court record shows that Petitioner could not have knowingly and intelligently waived his right to counsel on resentencing with his "eyes open."

A review of the February 18, 2020 transcript is far from a knowing and voluntary waiver of counsel. (Doc. 5-15 at 66–69; Doc. 5-16 at 1–7). Instead, the matter came before the state court at the prosecutor's request, despite the matter not being on the court docket. (Doc. 5-15 at 68–69). The record reflects substantial confusion regarding the reason the case was before the court, the procedural posture of the case, and whether the state court even had jurisdiction over the case because Petitioner's application for postconviction relief was on appeal in the state appellate court at that time. (Doc. 5-15 at 66–69; Doc. 5-16 at 1–7). The transcript reflects the following colloquy:

The Court: Mr. Lampley, the only thing I'm concerned about is the potential problem with your resentencing. And that is the only purpose for which I am appointing the public defender to discuss with you whether or not you were properly resentenced.

Defendant: Well, I got more time. The judge gave me more time when I was resentenced. And that was my claim.

The Court: Did you not have a lawyer at that time?

Defendant: I did not.

The Court: Did you waive your right to have a lawyer?

Defendant: No, sir.

The Court: Well, I'm going to appoint the Public Defender's Office for the sole purpose of determining whether or not he was appropriately represented or whether or not he needed a lawyer at the time he was resentenced.

[. . .]

The Court: I'm giving you a lawyer that you can talk to about the possible sentence that you were given.

Defendant: I don't need an attorney to speak with, your Honor.

The Court: You're satisfied with your sentence?

Defendant: No sir, I'm not. That's why I filed a claim against, you're answering aspects of my appeal right now, is that what you guys are addressing right now?

Prosecutor: No, no.

The Court: No.

Defendant: Well, why am I here if y'all not addressing –

The Law Clerk: I have no idea.

Defendant: – a response to my appeal because that's what I filed under for you to –

The Court: The State asked that you be brought in to appoint a lawyer.

Defendant: I don't need a lawyer.

The Court: You don't want a lawyer? You're representing yourself, apparently.

Defendant: I filed a[n] appeal.

The Court: That's what I understand and you're okay –

Defendant: What would I need an attorney for?

The Court: That's all I'm asking you.

Defendant: I'm asking you why would I need an attorney if the courts haven't ruled on my post-conviction yet, your Honor?

The Court: I didn't bring you in here, Mr. Lampley. The State brought you in asking me to appoint a lawyer for you.

Defendant: But they haven't even addressed the other claims that I have. That's just one particular claim.

The Court: All right. We're not going to do anything today. You can move forward –

Defendant: Can I ask you something else?

The Court: ***Mr. Lampley, I don't know anything about your case. I didn't even know you were here.*** Okay.

Defendant: I didn't even, was on notice that I was coming here. Can I ask you something? During a[n] appeal, if I have several claims, and the Court find[s] merit on one claim, do they entertain, do they not entertain the other claim?

The Court: Mr. Lampley, I'm not going to answer any hypothetical questions for you today. I mean, you seem very satisfied with where you are in your process so we're going to leave it there today. ***If something changes, then we'll make a determination at some later point.***

Defendant: ***So I don't need an attorney?***

The Court: ***You don't need an attorney, you're right.***

Defendant: ***What do I need an attorney for? I'm asking the Court to explain to me why would I need an attorney if they not addressing my post. My post is what I –***
The Court: ***You're right. I'm not giving you an attorney for your post-conviction.***

Defendant: But that's what I filed under. I filed under post-conviction on my appeal. Y'all not addressing the whole post, the whole appeal, why am I even here?

The Court: ***I think you're right, so we're not going to do anything today.***

Law Clerk: That's why I asked you to please talk to me before –

Prosecutor: I brought it, I extended it last time we were in court (inaudible) file.

Defendant: I don't even know why I was here.

The Court: All right. Well, we got it.

(End of Transcript.)

(Doc. 5-15 at 66–69; Doc. 5-16 at 1–7 (emphasis added)).

Thereafter, on November 4, 2021, the state court issued an order granting Petitioner's application for post-conviction relief with respect to his claim that the trial court violated his rights by resentencing him in the absence of counsel. (Doc. 5-19 at 1). The state court provided the following reasons for its order:

> 1) violation of 6th amendment right to counsel; 2) trial judge increased original sentence on Count II Human Trafficking of M.J., violation of R.S. 14:46.2A(1) from 15 years hard labor to 20 years with the Department of Corrections (D.O.C.) without setting forth reasons on the record; 3) the trial court judge did not question the defendant as to whether he had or would like an attorney present during re-sentencing on May 15, 2019; and 4) the court does not find the

> defendant waived his right to counsel by his failure to make such request.

(Doc. 5-19 at 1).

The next day, on November 5, 2021, the matter came before the state court for a hearing. (Doc. 11-2). As a result of the hearing, the state court amended its November 4, 2021 order to deny Petitioner's application for post-conviction relief with respect to his claim that the trial court violated his rights by resentencing him in the absence of counsel. (Doc 5-19 at 3). The court reasoned that Petitioner engaged in an "oral waiver of counsel on February 18, 2020 and November 5, 2021, and desire to represent himself on all claims contained in his post-conviction relief application." (*Id.*).

The Court has already found that the February 18, 2020 hearing did not constitute a knowing and voluntary waiver of the right to counsel at Petitioner's resentencing, and thus turns to the November 5, 2021 transcript. (Doc. 11-2). After a review of the entirety of the November 5, 2021 transcript, the Court agrees with the Report's conclusion that "[n]othing in the record indicates a knowing and intelligent waiver of counsel by the petitioner with regards to his resentencing." (Doc. 15 at 12). The Report emphasized:

> After a muddled discussion, petitioner expressed that he wished to represent himself with regards to his application for post-conviction relief. It was clear that the petitioner did not know that he was entitled to resentencing with counsel present, and that his original sentence could be restored. This was not clearly explained to him, and without this understanding the petitioner thought the court was asking him if he wanted to be represented in connection with his application for post-conviction relief.

(Doc. 15 at 11). The Court agrees.

Because the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings, and because Petitioner did know knowingly, voluntarily, and intelligently waive his right to Counsel, the Court will **ADOPT** the Report and **GRANT** Petitioner's habeas Petition with respect to Claim 4.

Upon *de novo* review, and having carefully considered Petitioner's Petition, the State's opposition, the Parties' Objections, the state court record, and related filings, the Court **APPROVES** the Magistrate Judge's Report and Recommendation and **ADOPTS** it as the Court's opinion in this matter.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Petitioner's **Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (Doc. 1)** be and is hereby **GRANTED IN PART** with respect to Petitioner's Claim 4.

**IT IS FURTHER ORDERED** that the state court shall:

(1) vacate Petitioner's sentence; and

(2) resentence Petitioner with counsel present or without counsel only after Petitioner has knowingly, voluntarily, and intelligently waived his right to counsel.

**IT IS FURTHER ORDERED** that Petitioner's **Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody**

**(Doc. 1)** be and is hereby **DENIED IN PART** with respect to Petitioner's Claims 1, 2, and 3.

**IT IS FURTHER ORDERED** that the above-captioned action be and is hereby **DISMISSED WITH PREJUDICE.**

Judgement shall be entered separately.

Baton Rouge, Louisiana, this 30th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**